NO. 07-00-0026-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



DECEMBER 12, 2001



______________________________




MITCHELL RAY RODGERS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE CRIMINAL DISTRICT COURT NO. 4 OF DALLAS COUNTY;



NO. F-9343098-RK; HONORABLE J. ZIMMERMANN, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 In this case, appellant Mitchell Ray Rodgers was indicted for the offense of burglary
of a building, enhanced by two prior felony convictions. On January 24, 1994, he entered
a plea of guilty and was granted deferred adjudication community supervision for a period
of ten years. On September 24, 1999, the trial court proceeded to adjudicate appellant's
guilt and assessed his punishment at 20 years confinement in the Institutional Division of
the Department of Criminal Justice. From a general notice of appeal, appellant now
challenges that sentence. In doing so, he raises three issues for our decision. In those
issues, he asserts: 1) his plea of guilty was involuntary because his trial counsel did not
render effective assistance; 2) he was denied due process because the "trial judge's
statements indicated predisposition towards the matter, depriving appellant of a neutral
and detached hearing body," and 3) his plea of guilty "must be presumed involuntary, for
there is no record of the existence of a voluntarily signed judicial confession, and the
appellant's lack of any plea of true on the record, coupled with the Court's obvious
acceptance of said phantom pleas, made such pleas clearly involuntary." We dismiss for
want of jurisdiction.

 A defendant ordinarily may not appeal the trial court's determination to proceed to
adjudicate guilt after a deferment. Tex. Code Crim. Proc. Ann. art. 42.12 § 5(b) (Vernon
Supp. 2001) (no appeal may be taken from the determination to proceed with a
determination of guilt); Brown v. State, 896 S.W.2d 327, 328 (Tex.App.--Houston [1st Dist.]
1995, pet. denied). Furthermore, in cases in which the adjudication arises from a
defendant's plea of guilty or nolo contendere, and the punishment does not exceed the
recommendation by the prosecutor, the notice must also state that: 1) it is for a
jurisdictional defect; 2) it is for matters raised by written motion before trial; or 3) the trial
court granted permission to appeal. Tex. R. App. P. 25.2(b). 

 Appellant's notice of appeal does not satisfy these requirements. Citing Manuel v.
State, 994 S.W.2d 658 (Tex.Crim.App. 1999), the State posits that because of that lack,
and the fact that appellant did not raise the question of the ineffectiveness of his trial
counsel in an appeal at the time he was placed on deferred adjudication, he may not now
raise that question. In Manuel, the relevant holding was that "a defendant placed on
deferred adjudication community supervision may raise issues relating to the original plea
proceeding such as evidentiary sufficiency, only in appeals taken when deferred
adjudication community supervision is first imposed." Id. at 662. 

 We also note the recent holding in Cooper v. State, 45 S.W.3d 77 (Tex.Crim.App.
2001), that in an appeal from a plea bargained felony conviction in which the judgment
assessed by the trial court does not exceed the punishment recommended by the
prosecutor and agreed to by the defendant, the voluntariness of his guilty plea may not be
raised. Id. at 83. In Crawford v. State, 890 S.W.2d 941 (Tex.App.--San Antonio 1994, no
pet.), the court held that a plea bargain agreement that did not encompass an agreed
recommendation as to punishment did not fall within the parameters of Rule of Appellate
Procedure 40(b)(1), the progenitor of present Rule 25.2(b)(3), and a general notice of
appeal was sufficient to invoke the appellate court's jurisdiction. Id. at 943. However, in
Vidaurri v. State, 49 S.W.3d 880 (Tex.Crim.App. 2001), the court considered a plea
bargain in which there was a plea bargained recommendation for deferred adjudication but
there was no recommendation as to punishment. In that case, the court opined, even
without a State recommendation as to punishment, the defendant's knowledge that he was
subject to punishment within the range allowed by law meant the punishment did not
exceed that recommended by the prosecutor and Rule 25.2(b)(3) was applicable.

 It is in the light of those decisions that we examine the procedural history of this
case. We must first consider appellant's initial contention that he never actually entered
a plea, either to the charged offense or to the alleged enhancement offenses, because if
he never entered a plea, there would be no valid judgment for us to consider. The record
shows a written instrument styled "Waiver of Jury-Felony Plea of Guilty/Nolo
Contendere/Indictment/Information." That document contains some eight printed warnings
and explanations of the defendant's rights and the effect of a waiver of those rights. It also
contains a recitation that "I do further admit and judicially confess that I am the person
named in the charging instrument and that I understand the charge contained therein." It
also contains an acknowledgment by which a check mark is placed. That acknowledgment
reads, "I am guilty of the offense of Burglary of a Building." The instrument is signed by
appellant and his lawyer. The instrument also contains a certificate by the trial judge
certifying that he has warned appellant of "the consequences of the plea entered herein."
The judge further certifies that he "finds such plea, and all waivers, agreements and
consents contained herein to be freely and voluntarily made and accepts the Defendant's
plea" (emphasis added). The record is amply sufficient to negate appellant's claim that he
never actually entered a guilty plea.

 With regard to appellant's claim that he did not enter a plea on the enhancement
paragraphs, the reporter's record reveals that during the course of the plea hearing and
prior to the time that the trial court announced that it was accepting appellant's plea of
guilty, the following colloquy occurred: 

 Court: Do you want to offer in State's exhibit number 2, being the
defendant's signed plea of true in both cases?


 Prosecutor: Yes, sir, I do.


The exhibit was then received into evidence without objection. The record is sufficient to
establish that appellant did enter a plea to the enhancement paragraphs.

 With regard to any question whether the plea was the result of a plea bargain, the
record contains an instrument denominated "Plea Bargain Agreement," which is signed by
appellant, his counsel, and the prosecutor. It contains a check by paragraphs providing
that appellant would plead guilty and testify. It also contains a paragraph providing, 
"[a]dditional provisions of the agreement are:" This paragraph contains the following
handwritten notation, namely, "Open plea - for probation & drug rehabilitation." This
instrument is also signed by the prosecutor, appellant and his attorney. This record is
sufficient to establish that a plea bargain was struck that appellant would plead guilty and
the State would not oppose a plea for probation with drug rehabilitation. Under the
instruction of Vidaurri, this agreement is sufficient to limit our jurisdiction to consider
appellate issues to those stated in a notice of appeal complying with the requirements of
Rule of Appellate Procedure 25.2(b). 

 We have not overlooked the State's contention that although we should affirm
appellant's conviction, we should remand this case for a new punishment hearing because
the sentence was outside the applicable range of punishment. See Tex. Code Crim. Proc.
Ann. art. 44.29(b) (Vernon Supp. 2001). In pursuance of that request, the State points out
that appellant pled true, and the court found true, the enhancement allegations. That
being so, the applicable range of punishment was not less than 25 nor more than 99 years. 
See Tex. Penal Code § 12.42(d) (Vernon Supp. 2001). Because the sentence assessed
by the trial court is less than the minimum prescribed, the State contends that portion of
the court's judgment is void. See Heath v. State, 817 S.W.2d 335, 336 (Tex.Crim.App.
1991). However, for the reasons we have stated, appellant's notice of appeal was
ineffective and, because the State did not file a notice of appeal, we have no jurisdiction
to consider its contention.

 Accordingly, for the reasons we have recounted, this appeal must be, and is,
dismissed for want of jurisdiction.


 John T. Boyd

 Chief Justice


Do not publish.



 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00220-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JUNE
9, 2011

 



 

JONATHAN A. JACOBSON, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 140TH DISTRICT COURT OF
LUBBOCK COUNTY;

 

NO. 2007-418,173; HONORABLE JIM BOB DARNELL, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

OPINION

            Appellant,
Jonathan A. Jacobson, appeals his conviction, by jury, for aggravated sexual
assault of a child[1]
and the resulting punishment of forty-five years imprisonment.  On appeal, he contends the trial court erred
by overruling his objection to the States jury argument striking at him over
the shoulders of counsel.  We will
affirm.

 

 

Factual and Procedural History

            Appellant
does not challenge the sufficiency of the evidence to support the
conviction.  In fact, he concedes that
the evidence was sufficient.  In light of
his sole issue on appeal, we address only those facts necessary to the
disposition of the appeal.

            Appellant
was a family friend of complainant, B.J.P. 
The relationship between twelve-year-old B.J.P. and twenty-year-old
appellant began as one resembling siblings but transformed into a possessive,
sexual relationship.  After a number of
outbursts by appellant in response to any effort to keep B.J.P. away from him
and after discovering love letters between appellant and B.J.P., B.J.P.s
mother reported her suspicions to the Lubbock County Sheriffs Department.  The department began its investigation.

            Initially,
B.J.P. was reluctant to discuss her relationship with appellant.  Early in her interview with Detective Richard
Mayer, she denied the existence of a sexual relationship.  Based on his investigation up to that point,
however, Detective Mayer sensed that B.J.P. was not being truthful with him
and, so, he persisted in asking her questions while reassuring her that, if she
and appellant had had a sexual relationship, she would not be in trouble.  B.J.P. admitted that she and appellant did
have a sexual relationship.

            During
cross-examination, Mayer testified that, at the beginning of his investigation,
he did not know whether appellant was guilty or innocent.  Mayer explained that, even after B.J.P.
admitted that she and appellant had engaged in sexual intercourse, he continued
his investigation into the matter:

I still knew that even with her saying yes [that sexual intercourse did
occur] that I would need more to prove the case, which would be the CARE
exam.  So I wasnt like, Oh, I got this
one in my win pile, you know . . . I still have to go through the steps of
investigation to be sure that Im not just falsely accusing somebody of
something.

            During closing argument to the jury, defense counsel
seized on the win pile phrase and focused on Detective Mayers investigatory
approach as he attempted to paraphrase Mayers testimony:

Some of the things that Detective Mayer told you that came out, that
just jumped up.  We have to ask
ourselves, now, what is it going to take as far as details, as far as
testimony, to put this case in the win pile? 
You remember thats what the detective said, in the win pile.  And he thought about that.  From the interview with
Mike Privette right off the bat, the first interview.

. . .

The State then asked the detective if he was uncomfortable, and he felt
essentially as though he had been attacked, because he sat in that chair and
faced hard questions . . . . We start with him talking about how he put it in
the win pile.  Not about an
investigation.  Not about following where
the evidence leads.  You heard him say,
We know what happened.  We know who did
it.

Defense counsels jury
argument continued in a rather scathing tone, characterizing the investigation
as a witch hunt.

            The
State responded in its argument to the jury: Somebody in this courtroom has an
end result that they will twist and turn and fill in the holes to make it
work  Appellant objected to the States
argument as striking at appellant over shoulders of counsel, and the trial
court overruled appellants objection. 
In that same vein, the State continued: 
The Defense in this case had their end result, and they will twist the
words of Detective Mayer.  And if you
dont believe me, how many times did he stand up here and use the word win
pile?

            After
the jury found appellant guilty of aggravated sexual assault of a child as
alleged and during the trial on punishment, appellant testified and admitted to
having had an ongoing sexual relationship with B.J.P.  After considering appellants testimony and
the other punishment evidence, the jury assessed a forty-five year sentence.

            Appellant
timely appealed and now contends that the State struck at defendant over the
shoulders of counsel.  He maintains that
the trial court erred by overruling his objection to the States argument and
that, in light of the nature of States argument and the absence of any
curative instruction to the jury, such error was harmful.

Analysis

            Before
we can reach the merits of appellants point of error, we must first examine
the impact of appellants confession to the offense during the trial on
punishment.  The Texas Court of Criminal
Appeals outlined the effect that a defendants confession would have on
subsequent points of error in DeGarmo v.
State, 691 S.W.2d. 657, 66061 (Tex.Crim.App.
1985).  The general principle of DeGarmo,
was that a defendant may not complain on appeal of an error occurring at the
guilt phase of the trial when the defendant admits his guilt at the punishment
phase of trial.  Id.
at 661; Houston v. State, 208 S.W.3d 585, 58990 (Tex.App.Austin
2006, no pet.).  Ten years after DeGarmo, the Texas Court of Criminal Appeals
reaffirmed the DeGarmo doctrine and explained
the basis for such a rule:

When the defendant testifies and judicially confesses to the charged
offense, the purpose of the trial process has been servedthe truth has been
determined and the purpose of the guilt/innocence phase of the trial has been
satisfied.  No reversible error should
occur where the defendant has satisfied the necessity of the trial process.

McGlothlin v. State, 896 S.W.2d 183, 187 (Tex.Crim.App. 1995).

            The
Texas Court of Criminal Appeals refined and narrowed the scope of the DeGarmo doctrine in Leday
v. State, 983 S.W.2d 713, 715 (Tex.Crim.App.
1998) (en banc).  The Leday
court acknowledged that we as a people have deliberately chosen to adopt laws
which interfere with the truth-seeking function of the criminal trial.  Id. at 724.  Therefore, the court explained, the need to
protect some fundamental rights outweighs the truth-seeking function of a
criminal trial.  Id.
at 72425.  After Leday, when issues are raised on appeal by an
appellant who admitted his guilt during the punishment phase of his trial, a
reviewing court must determine if appellant asserts fundamental rights or
guaranties [which he cannot be estopped from
asserting], or whether the truth-finding function prevails to estop appellant from raising them.[2]  Gutierrez v. State,
8 S.W.3d 739, 745 (Tex.App.Austin 1999, no pet.).  In other words, when an alleged error during
the guilt/innocence phase of trial does not implicate a defendants fundamental
rights, a defendant who admits guilt at the punishment phase of trial is estopped from raising that error on appeal.  See Wenger v.
State, 292 S.W.3d 191, 202 n.8 (Tex.App.Fort
Worth 2009, no pet.) (admission of extraneous
offense evidence); Jarmon v. State, 263
S.W.3d 25, 3031 (Tex.App.Houston [1st Dist.] 2006,
pet. refd) (same); Houston, 208 S.W.3d at
59091 (same); Kelley v. State, 22 S.W.3d 628, 631 (Tex.App.Fort
Worth  2000, pet. refd)
(alleged jury charge error); Gutierrez, 8 S.W.3d at 745 (jury
note-taking during trial).  

            During
his testimony at the trial on punishment, appellant confessed to having had
sexual intercourse with B.J.P.  Thus, he
will be estopped from raising his point of error on
appeal unless we determine that the error of which he complains implicates a
fundamental right.  So, we first evaluate
the nature of the issue appellant presents to this Court.  That is, we must determine whether the issue
appellant raises is one which implicates fundamental rights or guaranties and,
thus, is one that, under Leday, is of the
nature that would survive for our review beyond appellants confession.  

            Our
research yields no case that directly addresses the DeGarmo/Leday doctrines application to assertions
that the State struck at defendant over the shoulders of counsel.  We, therefore, look to the treatment of this
type of error in other contexts.  See Jarmon, 263 S.W.3d at
30 (for a thorough discussion of the considerations that go into evaluation
whether the error implicates a fundamental right under Leday).

            It
is well established that an appellant who fails to raise the complaint that the
State struck at him over the shoulders of counsel forfeits his right to advance
his complaint on appeal.  See Threadgill v. State, 146 S.W.3d 654, 667 (Tex.Crim.App. 2004); see also Huff v. State,
No. 07-10-00174-CR, 2010 Tex. App. LEXIS 9424, *1011 (Tex.App.Amarillo
Nov. 29, 2010, no pet.) (mem. op., not designated for
publication); Stephenson v. State, 255 S.W.3d 652, 659 (Tex.App.Fort Worth 2008, pet. refd).  From these cases, we can conclude that the
error of which appellant complains is not considered fundamental error which
could be raised for the first time on appeal. 
Further, the Texas Court of Criminal Appeals has consistently and
clearly concluded that error associated with striking over the shoulders of
counsel is subject to harm analysis as nonconstitutional
error.  See Brown
v. State, 270 S.W.3d 564, 57273, n.2 (Tex.Crim.App.
2008); Martinez v. State, 17 S.W.3d 677, 692 (Tex.Crim.App.
2000); Mosley v. State, 983 S.W.2d 249, 259 (Tex.Crim.App.
1998).

            In
anticipation of the States argument, appellant cites the Court to Leday and likens the issue in the instant case to an
improper prosecutorial comment on a defendants failure to testify.  Appellant does not advance an argument that
the States argument in the instant case constitutes an improper comment on
appellants failure to testify in the guilt/innocence phase of trial.  Rather, he suggests that the argument that
strikes at a defendant over counsels shoulders is similar to or should receive
similar treatment as a prosecutorial comment on the failure to testify.  We decline to adopt his analogy.  Unlike the issue at bar, a defendants
privilege against self-incrimination is a right that is directly and firmly
rooted in constitutional law.  U.S. Const. amend.
V; Griffin v. California, 380 U.S. 609, 614, 85
S.Ct.1229, 14 L.Ed.2d 106 (1965); Cruz v. State, 225 S.W.3d 546, 548 (Tex.Crim.App. 2007). 
Leday recognized this and includes such
a right in its non-exhaustive list of exceptions to the estoppel-by-confession
principle.  983 S.W.2d
at 725.  

            Drawing
upon cases that characterize the type of error which appellant urges here as
forfeitable by inaction and nonconstitutional in
nature, we conclude that such error does not implicate fundamental rights and,
thus, is not in the category of error that would survive for our review under Leday after appellant confessed to having committed
the offense.  Under Leday,
appellant is estopped from complaining of improper
jury argument after he admitted during the punishment trial that he committed
the offense, and our review of this issue on these facts is precluded.  Accordingly, we overrule appellants sole
issue on appeal.

Conclusion

            Having
overruled appellants sole point of error, we affirm the judgment of the trial
court.[3]

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

Publish. 


 











[1]
See
Tex. Penal Code Ann. § 22.021(a)(2)(B) (West Supp. 2010).





[2]
The Leday court
also set out a non-exhaustive list of errors that a defendant who confessed
guilt is not estopped from raising on appeal: (1)
errors violating the Due Process Clauses of the Fifth and Fourteenth Amendments
regarding the right to have guilt proved beyond a reasonable doubt; (2) errors
violating the right in the Double Jeopardy Clause of the Fifth Amendment to not
be subjected to a second trial even when there is clear evidence of guilt; (3)
errors violating the right to refuse to testify found in the Self-Incrimination
Clause of the Fifth Amendment; (4) errors violating the right found in the Due
Process Clause of the Fourteenth Amendment to exclude coerced confessions; (5)
errors violating the Fourth Amendment prohibition against unlawful search and
seizure and illegally obtained evidence; (6) errors violating Article 5 of the
Rules of Evidence regarding exclusion of privileged evidence; (7) errors
violating the right to have excluded custodial interrogation statements not
conforming to the requirements of the Code of Criminal Procedure art. 38.22;
(8) errors violating the right to have jurors prevented from asking witnesses
questions.  983 S.W.2d at
725.





[3]  In addition to
joining the majoritys opinion, C.J. Quinn would also overrule the issue
because the utterance, when viewed in context, would not be one that reasonable
jurors would interpret as commenting upon appellants right to remain silent.